**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**BERNARD BATTLE,**

    **Plaintiff,**

v.                                                                           **Civil Action No. 3:13-cv-58**

**UNITED STATES OF AMERICA, et al.,**

    **Defendants.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On May 28, 2013, *pro se* Plaintiff Bernard Battle ("Plaintiff") filed a "Motion of Constructive Notice," in which he raised Eighth Amendment claims of excessive force and inadequate medical care against Defendants. (Docket No. 1.) The Clerk construed Plaintiff's document as a complaint and issued a Notice of Deficient Pleading, instructing Plaintiff to file an application to proceed *in forma pauperis* or to pay the requisite filing fee, a Consent to Collection of Fees from Trust Account, his Prisoner Trust Account Report with attached ledger sheets, and the correct form pursuant to Local Rule of Prisoner Litigation Procedure 3.4. (Docket No. 3.) Plaintiff filed his Court-approved Complaint pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971), on June 10, 2013. (Docket No. 5.) He also filed a motion for leave to proceed *in forma pauperis*, which the undersigned granted on June 17, 2013. (Docket No. 9.)

Subsequently, the undersigned directed the Clerk to issue a sixty (60)-day summons to each individual Defendant and to have the United States Marshal Service effect service on each individual Defendant. (Docket No. 13.) Defendants, by Assistant United States Attorney Betsy Jividen, filed a Motion to Dismiss or for Summary Judgment (Docket No. 32), along with an accompanying

Memorandum in Support (Docket No. 33), on November 21, 2013. Accordingly, the undersigned issued a notice pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975), notifying Plaintiff of his right to file a response to Defendants' motion. (Docket No. 34.) Plaintiff filed a response on December 16, 2013. (Docket No. 38.) Defendants filed a reply on February 24, 2014.[1] (Docket No. 53.)

## II. Contentions of the Parties

### A. *Plaintiff's Complaint*

In his Court-approved Complaint, Plaintiff alleges an Eighth Amendment violation against Defendants. (Docket No. 5 at 7.) According to Plaintiff, while he was an inmate at USP Hazelton,[2] Defendants used excessive force by unnecessarily placing him in ambulatory restraints for a continuous twenty-six (26) hour period from May 21 through May 22, 2013. (Docket No. 5-1 at 1-5.) Plaintiff states that during that time, he was physically assaulted and was not provided medical attention. (Id.) He argues that Defendants treated him in this manner to attempt to force him to sign a plea agreement offered by an Assistant United States Attorney for a charge of indecent exposure.[3]

---

[1] Plaintiff filed a "Reply to Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment, Demand for a Jury Trial" on March 17, 2014. On March 27, 2014, Defendants filed a Motion to Strike, citing Local Rule of Prisoner Litigation Procedure 11.4, which states that "Surreply and surrebuttal memoranda may not be filed." (Docket No. 59.) By Order entered May 15, 2014, the undersigned granted Defendants' Motion to Strike. (Docket No. 61.)

[2] Plaintiff is presently incarcerated at USP Tuscan in Tuscon, Arizona.

[3] On May 31, 2013, the United States Attorney for the Northern District of West Virginia filed an Information charging Plaintiff with twelve (12) counts of indecent exposure. United States v. Battle, Crim. No. 1:13-cr-46, Docket No. 14. On August 2, 2013, Plaintiff appeared before the undersigned and entered a guilty plea to indecent exposure, a lesser included offense to those charged in Counts One, Two, Three, and Four. Id., Docket No. 37. The undersigned sentenced Plaintiff to a total of 360 days' imprisonment, to be served consecutively to any

(Id. at 5-9.) Plaintiff states that he did not file an administrative grievance because he has "already been physically assaulted once for attempting to file a grievance, and [he] is afraid if [he] do[es] so [he will] be further retaliated against"; however, he also states that he filed a sensitive BP-9 complaint with the Mid-Atlantic Regional Director but "nothing has been done." (Docket No. 5 at 4.) As relief, Plaintiff asks the Court to enter an injunction "placing an immediate seperation [sic] between all the defendants." He also asks to be transferred to another prison facility and for the Court to grant him monetary damages in the amount of $50,000.00 from each defendant. (Id. at 9.)

B.  *Defendants' Motion to Dismiss or for Summary Judgment*

In support of their motion, Defendants raise the following arguments:

1. Plaintiff failed to fully exhaust his administrative remedies;

2. Defendants M. Doyle, D. Huff, and C. Meyer must be dismissed due to lack of personal involvement;

3. Defendants C. Meyer and A. McArdle must be dismissed because they are Public Health Service employees;

4. Plaintiff's Eighth Amendment claims of cruel and unusual punishment must be dismissed; and

5. Plaintiff's claims against all Defendants should be dismissed because Defendants are entitled to qualified immunity.

(Docket No. 33 at 4-15.)

C.  *Plaintiff's Response*

In his response, Plaintiff asserts that he was unable to exhaust his administrative remedies because prison officers confiscated all ink pens from inmates in the Special Housing Unit ("SHU")

---

sentence Defendant was currently serving or would serve in the future. Id., Docket Nos. 37 & 40.

at USP Hazelton and put them in the SHU law library. However, according to Plaintiff, he could not access the ink pens because staff refused his requests to use the law library. (Docket No. 38 at 20-21.) He also contends that his counselor, Mr. A. Baughman, refused to provide him with the requisite BP-9 form to submit his grievance. (Id. at 20.) Plaintiff further argues that staff at Hazelton refused to process his remedy requests. (Id. at 18.)

D. *Defendants' Reply*

In their reply, Defendants assert that:

1. Administrative remedies are not "unavailable" when a plaintiff deliberately chooses to ignore the requirements of proper exhaustion;

2. The record evidence does not support Plaintiff's most recent contention that the administrative remedies process was rendered "unavailable" by virtue of the Defendants' conduct herein;

3. Plaintiff has failed to sufficiently allege an Eighth Amendment claim; and

4. Defendants are entitled to qualified immunity.

(Docket No. 53 at 1-15.)

### III. Standards of Review

A. *Motion to Dismiss*

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

4

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable," id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court, which has held that a "claim has factual plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

B.  *Motion for Summary Judgment*

A grant of summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Motions for summary judgment impose a difficult standard on the moving party because it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). In applying the standard for summary judgment, a court must review all evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but . . .must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly

probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587 (citation omitted).

## IV. Analysis

### A. *Exhaustion of Administrative Remedies*

A Bivens action, like an action under 42 U.S.C. § 1983, is subject to exhaustion of administrative remedies as required by the Prison Litigation Reform Act ("PLRA"). Porter v. Nussle, 534 U.S. 516, 524 (2002). Under the PLRA, a prisoner bringing an action with respect to prison conditions under Bivens, § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997e(a). Exhaustion as provided in § 1997e(a) is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[4] and is required even when the relief sought is not available. Booth v. Churner, 532 U.S. 731, 741 (2001). Because exhaustion is a prerequisite to filing suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 93-94 (2006), the Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and

---

[4] Porter, 534 U.S. at 524.

(3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, the PLRA exhaustion requirement requires *full* and *proper* exhaustion. Id. at 92. Full and proper exhaustion includes meeting all the time and procedural requirements of the prison grievance system. Id. at 103.

The Bureau of Prisons ("BOP") provides a four-step administrative remedy process beginning with attempted resolution with prison staff (BP-8). If the prisoner achieves no satisfaction informally, he must file a written complaint with the warden (BP-9) within twenty (20) calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the warden's response, he may appeal to the regional director of the BOP (BP-10) within twenty (20) calendar days of the warden's response. Finally, if the prisoner has not received any satisfaction, he may appeal to the Office of the General Counsel (BP-11) within thirty (30) calendar days of the date the Regional Director signed the response. An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R. § 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F. Supp. 941, 943 (D. Md. 1997).

There are exceptions to the requirement that an inmate initially file a grievance at the institution level. Particularly, 28 C.F.R. § 542.14(d)(1) provides:

> Sensitive issues. If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director. The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the request at the institution. If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.

Despite the fact that the Supreme Court has stated that it "will not read futility or other

exceptions into statutory exhaustion requirements," Booth, 532 U.S. at 741, n.6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Ziemba v. Wezner, 366 F.3d 161, 163 (2d Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense when defendant's actions render grievance procedure unavailable); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001) (remedy not available within meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Aceves v. Swanson, 75 F. App'x 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance forms upon request). Indeed, the Fourth Circuit has held that "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008).

Furthermore, a number of courts of appeals have held that prison officials' threats of violence can render administrative remedies unavailable. See, e.g., Turner v. Burnside, 541 F.3d 1077, 1085 (11th Cir. 2008); Kaba v. Stepp, 458 F.3d 678, 686 (7th Cir. 2006); Hemphill v. New York, 380 F.3d 680, 688 (2d Cir. 2004). But see Larkin v. Galloway, 266 F.3d 718, 723-24 (7th Cir. 2001) (failure to exhaust not excused because plaintiff was afraid of retaliation). For threats or intimidation to render administrative remedies unavailable, they must typically be substantial and serious enough that they would deter a similarly situated prisoner of ordinary fitness from pursuing administrative remedies. See Turner, 541 F.3d at 1085; Kaba, 458 F.3d at 684-86; Hemphill, 380 F.3d at 688.

Despite Plaintiff's assertion that he was afraid to pursue his administrative grievances because staff at USP Hazelton would retaliate against him, the record clearly establishes that Plaintiff

9

was able to file a "sensitive" B-9 with the Mid-Atlantic Regional Director. C. Eichenlaub, Mid-Atlantic Regional Director, wrote a response to Plaintiff indicating that his administrative grievance was filed in the regional office on May 28, 2013. (Docket No. 33-4 at 1.) This response was dated June 12, 2013. (Id.) Furthermore, the Government has attached to their Memorandum a declaration from Howard Williams, Paralegal Specialist at the Mid-Atlantic Regional Office. In his declaration, Mr. Williams asserts that he has reviewed Plaintiff's administrative remedy history and that Plaintiff did not appeal the Regional Director's response dated June 12, 2013. (Docket No. 33-1 at 2.) The undersigned also notes that Plaintiff initiated this lawsuit on May 28, 2013, the same day that his grievance was filed with the Regional Director. (Docket No. 1.)

As noted above, Plaintiff also claims that Defendants' conduct rendered the administrative grievance process unavailable to him. He specifically alleges that Defendants refused to process his remedy requests, that he was not allowed to possess a pen while in the SHU, and because his counselor refused to provide him with the requisite grievance forms. (Docket No. 38 at 18-20.) Plaintiff's assertions are belied by the record. The Government has provided a declaration from Andrew Baughman, Plaintiff's counselor when he was incarcerated at USP Hazelton. Mr. Baughman states that during the time Plaintiff was in the SHU at USP Hazelton, he "visited the SHU two to three times a week, and carried a folder with administrative remedy forms to give to inmates when requested." (Docket No. 53-1 at 1.) Mr. Baughman further declares that Plaintiff filed several administrative grievances while in the SHU. (Id. at 1-2.) Mr. Baughman never withheld remedy forms from Plaintiff. (Id. at 2.) He further states that "there is no policy requiring inmates use pens to file administrative remedies or their appeals. Inmates housed in the SHU were allowed pencils in their cells. The absence of pens in the cell would not have prevented inmate Battle form filing

10

an administrative remedy or appeal." (Id.)

In sum, the undersigned finds that Plaintiff failed to exhaust his administrative remedies. The undersigned finds the sworn affidavit of Mr. Baughman more credible and persuasive than on the unsworn allegations of Plaintiff. Moreover, the fact that Plaintiff was able to file both a "sensitive" B-9 with the Mid-Atlantic Regional Office and the instant lawsuit demonstrates that Defendants' conduct did not render the process unavailable to him. Rather, instead of waiting for the Regional Director's response, Plaintiff chose to ignore the administrative grievance process and file his Complaint on the very same day his "sensitive" B-9 was filed with the Regional Office. Accordingly, the undersigned finds that Plaintiff's complaint is subject to dismissal for his failure to exhaust.

### B.    *Failure to State an Eighth Amendment Claim*

Notwithstanding Plaintiff's failure to exhaust his administrative remedies, the undersigned has also considered whether Plaintiff states a valid Eighth Amendment claim in his Complaint.

#### 1.    **Excessive Force–Use of Ambulatory Restraints and Complaints of Assault**

To comply with the Eighth Amendment, prison punishment must comport with "the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102 (1976). However, while courts should give deference to a prison official's determination of what measures are necessary to maintain discipline and security, "the unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 321-22 (1986). For a plaintiff to prove a claim of excessive force, he must first demonstrate that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation." Hudson v. McMillian, 503 U.S. 1, 8 (1992) (quoting Wilson v. Seiter,

501 U.S. 294, 298, 303 (1991)). Second, he must show that prison officials inflicted unnecessary and wanton pain and suffering. Id. at 6.

With regard to prison disturbances, whether unnecessary and wanton pain and suffering was inflicted "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21. To determine whether an official acted maliciously and sadistically, the following factors should be balanced: (1) "the need for application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of the injury"; (4) "the threat reasonably perceived by the responsible official"; and (5) "any efforts made to temper the severity of a forceful response." Id. at 321; Williams v. Benjamin, 77 F.3d 756, 762 (4th Cir. 1996). The Supreme Court has made it clear that the core judicial inquiry in an excessive force claim is not "whether a certain quantum of injury was sustained, but rather, whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (citation and internal quotation marks omitted). Instead, the extent of injury is one factor to consider, but it "does not end [the analysis]." Hudson, 503 U.S. at 7.

Plaintiff asserts that Defendants violated his Eighth Amendment rights by unnecessarily placing him in ambulatory restraints for 26 hours. However, the undersigned finds that the record establishes that Plaintiff was placed in restraints because of his unwillingness to follow orders. On May 21, 2013, at approximately 9:25 a.m., Plaintiff and his cellmate were being moved into a new cell. Plaintiff's cellmate refused to remove his arm from outside of the food slot and refused orders to do so. Officers subsequently ordered both Plaintiff and his cellmate to submit to restraints; they refused. A calculated use of force team was assembled; however, staff were successful at

12

confrontation avoidance, as both Plaintiff and his cellmate submitted to ambulatory restraints. (Docket No. 33-5 at 1.) Plaintiff's hands were cuffed in front, with a black box covering the keyhole portion. He was also wearing leg irons, with a waist chain running from the black box down to the leg irons. (Id. at 2.) The record further reflects that when an inmate is placed in ambulatory restraints, a lieutenant is required to check on that inmate every two hours, and welfare checks are performed every fifteen (15) minutes. (Docket No. 33-5 at 1-2.) During several of those welfare checks, Plaintiff was yelling at staff and being uncooperative. (Docket No. 33-7.) During the two-hour checks, Plaintiff refused to answer questions, announced that he was on a hunger strike, was aggressive and non-compliant with orders, was verbally abusive, and urinated on himself. (Docket No. 33-8 at 1-3.) Staff did not begin to remove his restraints until 10:00 a.m. on May 22, 2013, when Plaintiff was visibly calm and stated that he was ready to come out of the restrains. (Id. at 4.) Plaintiff has provided no evidence to dispute these assertions.

The Fourth Circuit has noted that "[c]ourts have . . . approved the limited use of . . . restraints, as a last resort, when other forms of prison discipline have failed." Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996). When Defendants decided to use ambulatory restraints, Plaintiff had already repeatedly refused several orders to submit to handcuffs. "[I]mposition of [ambulatory] restraints is seemingly not an uncommon 'next' step, if verbal commands, show of force, and mace, are ineffective in controlling prisoners. Williams, 77 F.3d at 764. Accordingly, the initial imposition of restraints, by itself, does not support the inference that Defendants applied them "maliciously and sadistically for the very purpose of causing harm." Whitley, 475 U.S. at 320-21.

The Western District of Virginia recently stated that "application of ambulatory restraints for 48 hours is not a use of force that offends contemporary standards of decency so as to satisfy the

13

objective component of an excessive force claim." Holley v. Johnson, No. 7:08CV00629, 2010 WL 2640328, at *14 (W.D. Va. June 30, 2010); see also Madison v. Kilbourne, No. 7:04CV639, 2006 WL 2037572, at *5-7 (W. D. Va. July 18, 2006), aff'd in part, vacated in part on other grounds by 228 F. App'x 293 (4th Cir. Mar. 27, 2007) (holding plaintiff in ambulatory restraints for 14 hours did not violate Eighth Amendment). In Madison, officers reasonably believed that the plaintiff needed to remain in ambulatory restraints because he "posed a continuing risk that needed to be controlled." 2006 WL 2037572, at *6. As noted above, here, Plaintiff also continued to be disruptive after he was first placed in ambulatory restraints, as he refused to answer questions, announced that he was on a hunger strike, was aggressive and non-compliant with orders, was verbally abusive, and urinated on himself. (Docket No. 33-8 at 1-3.) Given the similarities to the situation in Madison, the undersigned finds that the decision to place and keep Plaintiff in ambulatory restraints for 26 hours was "a rational, measured response to the risk that he would continue to be disruptive or destructive." Id.

Plaintiff also claims that Defendants Squires, Simpson, and Kunkle repeatedly punched or slapped him in his face and/or acted as lookouts while other correctional officers assaulted him. He also asserts that those officers made him sleep in his own urine and feces. The record is completely devoid of any evidence to support Plaintiff's complaints of staff assaults. In their declarations, Defendants Simpson, Kunkle, and Squires asserted that they neither assaulted Plaintiff nor acted as "lookouts" while other officers assaulted him. (Docket Nos. 33-5, 33-11, 33-12.) Furthermore, Defendant Squires stated that Plaintiff had been placed in ambulatory restraints during the time period at issue. According to Defendant Squires, "[a]n inmate in ambulatory restraints can stand completely upright, move around his cell, use the bathroom, wash himself, and eat, but cannot lift

14

his arms above his head, swing his arms, or kick his feet." (Docket No. 335- at 2.) The record does establish that on May 21, 2013, at some time before 10:00 p.m., Plaintiff did urinate on himself and the floor. (Docket No. 33-8 at 2; Docket No. 33-5 at 2.) However, Plaintiff had a toilet in his cell and, because he was able to move around, there was no reason that he could not have used the toilet. (Docket No. 33-5 at 2.) Accordingly, these complaints are insufficient to state an Eighth Amendment claim. See Holley, 2010 WL 2640328, at *13 ("Holley had regular access to food and liquids, could deposit his bodily waste in a toilet, and was not exposed to the hot sun without protection. He fails to demonstrate that any of the strip cell conditions, including deprivation of mattress and eating utensils, caused him anything more serious than temporary discomfort and embarrassment."). In sum, Plaintiff has failed to present any evidence to dispute Defendants' assertions. Accordingly, the undersigned finds that his claims regarding staff assaults are without merit.

**2.    Indifference to Medical Needs**

Plaintiff also asserts that Defendants, including Defendant McArdle, refused to assess his injuries and provide medical attention. To state a cognizable claim for denial of medical care in violation of the Eighth Amendment, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 105 (1976). A medical condition is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." Gaudreault v. Muncipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990). "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that

15

harm will result." Farmer v. Brennan, 511 U.S. 825, 835 (1994). Basically, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the risk to which the fact gave rise was insubstantial or nonexistence." Id. at 844.

Plaintiff's complaints of deliberate indifference to his medical needs are completely belied by the record. Defendant Squires stated in his declaration that when an inmate is placed in restraints, staff conduct welfare checks of the inmate every fifteen (15) minutes. (Docket No. 33-5 at 1-2.) Those checks were completed of Plaintiff. (Docket No. 33-7.) Furthermore, Defendant McArdle, a registered nurse, has denied that Plaintiff ever complained to her that his restraints were too tight and that she left without assessing his injuries. (Docket No. 33-10 at 1.) Specifically, Defendant McArdle asserts that she checked Plaintiff twice during her eight-hour shift on May 21, 2013. (Id.) At 8:00 p.m., she checked his restraints, and Plaintiff did not complain of any health problems. (Id.) At 10:00 p.m., Plaintiff refused to allow her to check the restrains and again did not complain of any injuries. (Id.) Furthermore, Defendant McArdle did not observe any injuries. (Id.) Additionally, Regional Health Systems Specialist Cindy Hein reviewed Plaintiff's medical records and asserted that Plaintiff did not complain of any injuries during the period when he was in restraints and that no injuries were noted by staff. (Docket No. 33-13.) In fact, Plaintiff did not complain of any injuries from May 21, 2013, when he was first placed in restraints, until August 16, 2013, when he was transferred to USP Tuscon. (Id.) Plaintiff has presented no evidence to dispute these assertions. Accordingly, the undersigned finds that Plaintiff has not established that Defendants acted with deliberate indifference to his medical needs.

### C. *Failure to State a Retaliation Claim*

Plaintiff further claims that Defendants placed him in ambulatory restraints in retaliation for his refusal to sign a criminal plea agreement in proceedings before this Court and because he had filed administrative remedies. (Docket No. 5 at 5-9; Docket No. 38 at 11-17.) To state a retaliation claim, the "plaintiff must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). However, the plaintiff must allege specific facts supporting his claim of retaliation; bare assertions are insufficient to establish a constitutional claim. Id. at 74-75.

The undersigned has already found that Defendants' actions did not violate Plaintiff's Eighth Amendment rights. Furthermore, the undersigned finds that the record is devoid of any evidence that Defendants acted in response to Plaintiff's filing of administrative grievances or his initial refusal to sign a plea agreement in his criminal proceedings in this Court. Nothing in the record indicates that Defendants themselves were even aware of Plaintiff's criminal proceedings or his past grievances. Quite simply, Plaintiff has not "come forward with specific evidence 'establish[ing] that but for the retaliatory motive the complained of incident . . . would not have occurred.'" Scott v. Kelley, 107 F. Supp. 2d 706, 709 (E.D. Va. 2000) (quoting Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995)). Accordingly, Plaintiff's claim of retaliation is without merit, as his bare assertions are not enough to establish a claim. Adams, 40 F.3d at 75.

### V. Conclusion

In sum, the undersigned finds that Plaintiff has failed to exhaust his administrative remedies; accordingly, on that ground alone, his complaint is subject to dismissal. Notwithstanding Plaintiff's failure to exhaust, the undersigned further finds that Plaintiff has failed to state Eighth Amendment

17

claims of excessive force or deliberate indifference to his medical needs and has failed to state a claim of retaliation against Defendants.

## VI. Recommendation

For the foregoing reasons, the undersigned recommends that Defendants' "Motion to Dismiss or For Summary Judgment" (Docket No. 32) be **GRANTED**.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Gina M. Groh, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to all counsel of record via electronic means and to mail a copy of this Report and Recommendation to the *pro se* Plaintiff by certified mail, return receipt requested.

DATED: May 21, 2014

*John S. Kaull*

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE